IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| IDEAL ELECTRIC COMPANY, | ) | CV-S-02-1092-DAE (LRL) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FLOWSERVE CORPORATION and | ) | |
| LAKE MEAD CONSTRUCTORS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| GILBERT WESTERN CORP. and | ) | |
| KIEWIT WESTERN CO., Delaware | ) | |
| corporations doing business as | ) | |
| LAKE MEAD CONSTRUCTORS, a | ) | |
| joint venture, | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| IDEAL ELECTRIC COMPANY, | ) | |
| | ) | |
| Counterdefendant. | ) | |
| _____ | ) | |
| | ) | |
| GILBERT WESTERN CORP. and | ) | |
| KIEWIT WESTERN CO., Delaware | ) | |
| corporations doing business as | ) | |
| LAKE MEAD CONSTRUCTORS, a | ) | |
| joint venture, | ) | |
| | ) | |
| Cross-claimants, | ) | |

|                                                                                           |     |
|-------------------------------------------------------------------------------------------|-----|
|                                                                                           | )   |
| vs.                                                                                       | )   |
|                                                                                           | )   |
| FLOWSERVE CORPORATION, a New York corporation, SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation, | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                        Cross-defendants.                                                  | )   |
| _____                                                          | )   |
|                                                                                           | )   |
| FLOWSERVE CORPORATION, et al.,                                                            | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                        Third-Party Plaintiff,                                             | )   |
|                                                                                           | )   |
| vs.                                                                                       | )   |
|                                                                                           | )   |
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,                                           | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                                                                                           | )   |
|                        Third-Party Defendant.                                             | )   |
| _____                                                          | )   |

ORDER: (1) DENYING LAKE MEAD CONSTRUCTORS AND TRAVELERS
CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION FOR
CLARIFICATION OR RECONSIDERATION; (2) DENYING MOTION TO
STAY EXECUTION OF JUDGMENT; (3) DENYING WITHOUT PREJUDICE
FLOWSERVE CORPORATION'S MOTION FOR ENTRY OF JUDGMENT
FOR PRE- AND POSTJUDGMENT INTEREST; (4) DENYING WITHOUT
PREJUDICE IDEAL ELECTRIC COMPANY'S MOTION FOR ENTRY OF
JUDGMENT FOR PRE- AND POSTJUDGMENT INTEREST; AND (5)
<u>AMENDING FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The Court heard the three motions on March 28, 2007.  George Ogilvie III, Esq., appeared at the hearing on behalf Lake Mead Constructors and Travelers Casualty and Surety Company of America ("LMC"); Christopher Bechhold, Esq., appeared at the hearing on behalf of Flowserve Corporation ("Flowserve"); Jeffrey T. Golenbock, Esq., appeared at the hearing on behalf of Ideal Electric Company ("Ideal").  After reviewing the motions and the supporting and opposing memoranda, the Court DENIES LMC's Motion for Clarification or Reconsideration, DENIES LMC's Motion to Stay Execution of Judgment, DENIES WITHOUT PREJUDICE both Flowserve and Ideal's  Motions for Entry of Judgment for Pre- and Postjudgment Interest.

<u>BACKGROUND</u>

On November 22, 2006, after a bench trial in this case, this Court issued its Findings of Fact and Conclusions of Law (docket # 255) (hereinafter "F&C").  This Court determined that Flowserve materially breached the Material Contract.  (F&C ¶¶ 104, 149.)  This Court also found, however, that because Flowserve ultimately delivered the pumps, although untimely and somewhat problematic, and LMC received payments for the pumps from Southern Nevada Water Authority, LMC had unjustly retained a substantial benefit.  (<u>Id.</u> ¶ 112.) Therefore, this Court found in favor Flowserve on its unjust enrichment /quantum

meruit claims and awarded Flowserve equity damages of the remaining value of the Material Contract minus the damages LMC sustained as a result of the untimely delivery of the pumps. (Id. ¶¶ 112-13.) This Court calculated the damages and found that the net result is that LMC is liable to Flowserve in the amount $5,238,078.47, plus prejudgment interest pursuant to Section 17.130 of the Nevada Revised Statutes, accruing from October 30, 2002, the date of final completion of the Raw Water Project. (Id. at ¶¶ 149-51.)

Additionally, the Court found that Flowserve breached the Motor Contract with Ideal. (Id. ¶¶ 89-94.) This Court concluded that Flowserve owed Ideal $1,626,676.55 ($3,150,000 minus $1,523, 323.45 which Flowserve had already paid.) (Id. ¶ 93.) Additionally, the Court found that Flowserve was liable to Ideal for accrued interest beginning from the date on which final payment for the motors was due. (Id. ¶ 94.)

Judgment was entered by the clerk of the court on November 29, 2006 (docket # 256). The Judgment set forth the amounts owed by Flowserve and LMC, but did not include amounts for prejudgment interest.

On December 13, 2006, LMC filed the instant motion for clarification or reconsideration and a motion to stay execution of judgment (docket # 261). LMC asserts that this Court mistakenly awarded prejudgment interest to Flowserve

4

on its unjust enrichment claim because Flowserve's damages are unascertainable, and this Court did not consider LMC's good faith basis for withholding payment to Flowserve.  On December 22, 2006, and again on January 4, 2007, Flowserve filed an opposition.  LMC filed its reply on January 9, 2007.

On December 12, 2006, Flowserve filed a motion for entry of judgment for pre- and postjudgment interest (docket # 258).  LMC filed an opposition on December 27, 2006 (docket # 268).  On December 14, 2006, Ideal filed a similar motion for entry of pre- and postjudgment interest (docket #262).  Flowserve filed an opposition on December 28, 2006 (docket # 269).

<u>STANDARD OF REVIEW</u>

The disposition of a motion for reconsideration is within the discretion of the district court.  <u>Lolli v. County of Orange</u>, 351 F.3d 410, 411 (9th Cir. 2003); <u>Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003).  This rule derives from the compelling interest in the finality of judgments, which should not be lightly disregarded.  <u>Rogers v. Watt</u>, 772 F.2d 456, 459 (9th Cir. 1983); <u>Carnell v. Grimm</u>, 872 F. Supp. 746, 758 (D. Haw. 1994).

The Ninth Circuit requires a successful motion for reconsideration to furnish both a reason why the court should reconsider its prior decision, as well as

facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  Na Mamo O 'Aha 'Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999).

LMC seeks relief pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure.  Rule 60(b)(1) provides that the court may relieve a party from a final judgment for reason of "mistake, inadvertence, surprise, or excusable neglect."  Flowserve argues that LMC is raising purely legal issues, which are not authorized for reconsideration under Rule 60(b).  Flowserve asserts that LMC should have moved to alter or amend the judgment within ten days as required by Rule 59(e)[1], which it did not do, and should not be allowed to attack the judgment by collateral means.  Flowserve's arguments lack merit for several reasons.

First, the Ninth Circuit has recognized that Rule 60(b) may be used to reconsider legal issues.  Liberty Mut. Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir. 1982) (holding that the "law in this circuit is that errors of law are cognizable under Rule 60(b)" and finding that the district court had power under Rule 60(b)(1) to reconsider its award of costs).  Second, Flowserve filed its motion within ten days of the entry of judgment.  See Fed. R. Civ. P. 6 (noting that when the period

---

[1]Rule 59(e) provides that any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment. Fed. R. Civ. P. 59(e).

prescribed to file is less than eleven days, intermediate weekends and holidays shall be excluded in the computation).  Accordingly, this Court could treat Flowserve's motion as a motion under Rule 59(e).  See Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989) ("A motion filed within the ten-day period set by Federal Rule 59 may be construed as a Rule 59 motion though labeled according to another federal rule"); see also Whittaker v. Whittaker Corp., 639 F.2d 516, 520 (9th Cir. 1981) ("nomenclature is not controlling.").

Accordingly, under either rule, this Court will consider whether a mistake has been made and if the requested relief might have been granted.  See Fed. R. Civ. P. 60(b)(1); see also Whittaker, 639 F.2d at 520.  However, mere disagreement with a previous order is an insufficient basis for reconsideration and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.  Haw. Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).

<u>DISCUSSION</u>

To make an appropriate award of prejudgment interest, the following three items must be determined: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied.  Kerala Props., Inc. v. Familian, 137 P.3d 1146, 1148-49 (Nev. 2006).

At the time of trial and currently, the parties agreed that Nevada Revised Statues section 17.130 applies to this case. Nevada Revised Statues section 17.130 provides that "[w]hen no rate of interest is provided by contract . . . the judgment draws interest from the time of service of the summons and complaint until satisfied . . . ." Pursuant to this section, this Court found that both LMC and Flowserve were liable for prejudgment interest, accruing from October 30, 2002, the date of final completion of the Raw Water Project. (F&C ¶ 151.)

However, upon further consideration, this Court finds that Nevada Revised Statutes section 99.040 is the correct statute to apply to determine prejudgment interest in this case. The Supreme Court of Nevada has held that section 99.040 "applies in cases concerning contract disputes," and that Nevada Revised Statutes section 17.130 "applies in noncontract based actions." Kerala Props., 137 P.3d at 1149, 1147, 1150 n.9; see also Paradise Homes, Inc. v. Cent. Sur. & Ins. Corp., 437 P.2d 78, 83 (Nev. 1968) (applying Nev. Rev. Stat. § 99.040 since the case involved a contract action by a contractor against a subcontractor's surety). Although this case originally included both tort and contract causes of action, no party prevailed on any of the tort claims. Indeed, LMC prevailed only on its breach of contract claim against Flowserve, Flowserve prevailed only on its

quatum meruit/unjust enrichment claim (a quasi-contract claim) against LMC, and Ideal prevailed only on its breach of contract claim.

Furthermore, the exception in Nevada Revised Statutes section 99.040(2) does not apply here. Nevada Revised Statutes section 99.040(2) provides that the statute is inapplicable to a general contractor's payments owed to a subcontractor under Nevada Revised Statutes section 624.630. Section 624.630 governs the timing of payments made to subcontractors out of funds received by a contractor from an owner of a project. Nev. Rev. Stat. § 624.630. In State Drywall, Inc. v. Rhodes Design & Development, a drywall subcontractor brought a breach-of-contract action against a general contractor. 127 P.3d 1082, 1085 (Nev. 2006). The court held that the exclusion set forth in section 99.040(2) did not apply since that "only limits the application of that statute when a contractor's failure to pay its subcontractor is the direct result of not having received the necessary funds from the owner." Id. at 1085. In that case, the reason for withholding payment to State Drywall was not the result of an owner's failure to pay the general contractor. Id. at 1085-86. Therefore, the court found that Nevada Revised Statutes section 624.630 was inapplicable to the case and thus, Nevada Revised Statutes section 99.040 applied to determine prejudgment interest, rather than Nevada Revised Statutes section 17.130. Id.

9

Similarly, here, Nevada Revised Statutes section 624.630 is inapplicable since the Southern Nevada Water Authority paid LMC for the motors and delivery of the pumps.  (F&C ¶¶ 92, 109.)  Thus, although LMC withheld payment to Flowserve and Flowserve in turn withheld payment to Ideal, such withholding was not based upon LMC's failure to be paid by an owner of a project. Therefore, the appropriate statute to apply to determine prejudgment interest is Nevada Revised Statutes section 99.040.  See Wilson v. Pac. Maxon, Inc., 714 P.2d 1001, 1002 (Nev. 1986) (finding that Nev. Rev. Stat. § 99.040 governs the award of interest since a "suit for rescission of a contract is a suit arising out of a contract to which NRS 99.040 applies" and since the tort claims had been disposed of); cf Albios v. Horizon Communities, Inc., 132 P.3d 1022, 1036 (Nev. 2006) (noting that since the jury's award suggested that the jury based its award on a negligence claim, rather than on the breach of contract claim, Nev. Rev. Stat. § 17.130 applied instead of § 99.040).

Nevada Revised Statutes section 99.040 provides in part that:

When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due, in the following cases:  (a) Upon contracts, express or

10

implied, other than book accounts. . . . (c) Upon money
received to the use and benefit of another and detained
without his consent.

Because the parties' motions are based upon the wrong statute, and
the statutes differ as to the date when the interest rate should be determined, the
Court cannot address the parties' arguments in this order regarding the correct rate
to be applied and calculations of pre- and postjudgment interest.  Compare  Nev.
Rev. Stat. § 99.04 (stating that the rate of interest is determined by the date of the
transaction) with Nev. Rev. Stat. § 17.130 (noting that the interest rate shall be
calculated from the date of entry of the judgment).

Ideal is hereby directed to re-file its motion for entry of pre- and
postjudgment interest, setting forth the applicable rate and its calculations as to the
correct amount.  Ideal is directed to the holding by the Nevada Supreme Court in
Kerala Properties, that for purposes of calculating the rate of prejudgment interest,
"the transactional date is the date when the contract was signed."  137 P.3d at
1149.  The prejudgment interest rate is therefore fixed from the time of execution
of the contract through the entry of judgment.  Id. at 1150.  The prejudgment
interest rate is applied from the date when the money became due.  Id. at 1149.
The Nevada Supreme Court has interpreted the term "from the time money

11

becomes due" to mean "the time when performance was due as resolved by the court upon trial of the cause."  <u>Paradise Homes, Inc.</u>, 437 P.2d at 83.

Accordingly, the date that prejudgment interest begins to run is the date that final payment for the motors was due, as set forth in paragraph 94 of the F&C.  Furthermore, contrary to Flowserve's argument, its obligation to pay Ideal prejudgment interest is not contingent upon Flowserve receiving prejudgment interest from LMC.  Indeed, in the F&C, this Court found that

> [a]lthough the Motor Contract contained a 'pari passu' provision, the Court interprets this phrase as applicable only if LMC has withheld payment from Flowserve related [to] problems or delays stemming from the motors.  As the Court finds that LMC's refusal to compensate Flowserve was based on problems with the pumps alone, Flowserve was not entitled to deny payment to Ideal.

(F&C ¶ 94.)  Ideal is also directed to the Nevada Supreme Court's holding that the biannual rate adjustment provided for in Nevada Revised Statutes section 99.040 does not apply to prejudgment interest.  <u>Kerala Props.</u>, 137 P.3d at 1150.  Any motion for pre- and/or postjudgment interest must be filed on or before April 30, 2007.

With respect to LMC's liability for prejudgment interest to Flowserve, in its Reconsideration Motion, LMC argues that it should not be liable for

prejudgment interest to Flowserve because the past damages awarded to Flowserve were unascertainable.[2]  This Court disagrees.

In determining the amount of money to which the rate of interest must be applied, the Nevada Supreme court has held that

> [t]he amount of money to which the interest rate will be applied must be determined by the following factors: (1) if the contract breached provides for a definite sum of money, that sum; (2) if the performance called for in the contract, the value of which is stated in money or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, that sum.

Paradise Homes, Inc., 437 P.2d at 83; see also Hornwood v. Smith's Food King No. 1, 807 P.2d 208, 214 (Nev. 1991) ("[p]rejudgment interest on a damage award is only allowed where the damage award is known or ascertainable at a time prior to entry of judgment, either by reference to amounts fixed by the contract, or from established market prices").

---

[2]At the hearing, LMC argued that since there was an express written contract, Flowserve is not entitled to quatum meruit damages.  This argument is meritless.  The Nevada Supreme Court has held that "an action may be based upon quantum meruit even though an express contract exists."  J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc., 89 P.3d 1009, 1017 (Nev. 2004).  A party "is not required to elect between suing on the contract or in quantum meruit before obtaining a jury verdict."  Id.

In <u>Jeaness v. Besnilian</u>, 706 P.2d 143 (Nev. 1985), the court noted that the agreement at issue did not provide for a definite sum of money and the value of performance was not stated nor ascertainable by mathematical calculation from established market prices.  <u>Id.</u> at 147.  The court held that because of this absence of values, "[i]n effect, the amount due was unknown and unascertainable until rendition of the judgment and therefore did not become due until then.  To award prejudgment interest in this case was improper."  <u>Id.</u>

LMC relies heavily on <u>MacIsaac & Menk Co. v. Cardox Corp.</u>, 193 Cal. App. 2d 661 (Cal. App. 1961).  That case involved a subcontractor who brought suit to recover costs for additional labor, materials, and equipment provided for the job.  The court found that delays, changes and deviations made to plans by the other party interfered with the contractor's ability to schedule work, causing delays and interruptions in performance, thereby increasing the subcontractor's costs.  The court noted that these were not normal conditions and the subcontractor's increased costs were not subject to computation.  The court held that "[o]nly by a judicial determination arrived at from a consideration of all the conditions under which the work was done, could the extent to which the delays and interruptions added to the cost of the work have been ascertained."  <u>Id.</u> at 673.  This was due in part to the important factor that cost of labor was

unascertainable due to the abnormal conditions.  Thus, the court did not award prejudgment interest.

However, this case materially differs from <u>MacIsaac</u> because Flowserve is not seeking damages based upon costs of additional labor, materials, and equipment that it had to incur to complete the job.  Instead, Flowserve's damages are equal to "the remaining value of the contract minus the damages . . . that LMC sustained as a result of Flowserve's untimely delivery of the pumps." (F&C ¶ 113.)  The contract provided for a certain sum of money to be paid to Flowserve for delivery of the pumps.  Furthermore, LMC was aware of the costs it sustained as a result of Floweserve's untimely and problematic delivery of the pumps prior to judgment.  Indeed, LMC presented this Court with a detailed list of its costs, some of which was undisputed as recoverable.  Although there was a dispute as to whether a portion of LMC's costs should be recovered, the costs themselves were easily calculable.  Accordingly, LMC was aware of the maximum amount that it would be entitled to recover for its costs prior to the entry of judgment.

Moreover, LMC's argument with respect to its good faith basis for retaining amounts owed to Flowserve is irrelevant to a decision of whether prejudgment interest should be awarded.  Nowhere in the applicable statute does it

15

provide that a party's good faith should be taken into account.  In addition, an award of prejudgment interest is not intended as a penalty, but instead is compensation for the use of the money.  Ramada Inns, Inc. v. Sharp, 711 P.2d 1, 2 (Nev. 1985) ("Prejudgment interest is viewed as compensation for use by defendant of money to which plaintiff is entitled . . . it is not designed as a penalty.").  Accordingly, this Court finds that an award of prejudgment interest in favor of Flowserve and against LMC was proper since Flowserve's damages were ascertainable prior to judgment.

Finally, the parties dispute whether prejudgment interest is simple interest or compounded interest.  There is nothing in the statute that provides that interest should be compounded, and no case law in Nevada discusses that issue with respect to this particular statute.  If the Nevada legislature intended that interest be compounded, it would have specifically provided for such in the statute. Accordingly, this Court finds that prejudgment interest is simple interest.

Postjudgment interest, however, is compounded.  28 U.S.C. § 1961, which applies in this case, provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Interest shall be computed daily to the date of payment . . . and shall be compounded annually."

16

As set forth above with respect to Ideal, Flowserve may file a motion with respect to entry of pre- and postjudgment interest.  As with Ideal's prospective motion, any such motion for pre- and/or postjudgment interest must be filed on or before April 30, 2007.  Because the parties have stated that they have paid the principal amount owed, there is no need for a stay or to require a bond.

Based upon the above, this Court HEREBY AMENDS Paragraph 151 of its Findings of Fact and Conclusions of Law to read as follows:

151.   Flowserve is liable to Ideal, and LMC is liable to Flowserve for prejudgment interest pursuant to Nevada Revised Statutes section 99.040.  With respect to prejudgment interest in favor of Ideal, prejudgment interest commences to run from the date on which final payment for the motors was due, as set forth in paragraph 94, and the rate of prejudgment interest is determined off the date when the contract was signed, as provided in Nevada Revised Statutes section 99.040.  Similarly, with respect to prejudgment interest in favor of Flowserve, prejudgment interest commences to run from the date on which final payment for the pumps was due, and the rate of prejudgment interest is determined off the date when the contract was signed, as provided in Nevada Revised Statutes section 99.040.

## CONCLUSION

For the foregoing reasons, the Court DENIES LMC's Motion for Clarification or Reconsideration, DENIES LMC's Motion to Stay Execution of Judgment, DENIES WITHOUT PREJUDICE both Flowserve and Ideal's  Motions

for Entry of Judgment for Pre- and Postjudgment Interest and AMENDS its

Findings of Fact and Conclusions of Law as stated above.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 9, 2007.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE


Ideal Electric Company vs. Flowserve Corporation, et al., CV-S-02-1092-DAE (LRL);ORDER: (1) DENYING LAKE MEAD CONSTRUCTORS AND TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION FOR CLARIFICATION OR RECONSIDERATION; (2) DENYING MOTION TO STAY EXECUTION OF JUDGMENT; (3) DENYING WITHOUT PREJUDICE FLOWSERVE CORPORATION'S MOTION FOR ENTRY OF JUDGMENT FOR PRE- AND POSTJUDGMENT INTEREST; (4) DENYING WITHOUT PREJUDICE IDEAL ELECTRIC COMPANY'S MOTION FOR ENTRY OF JUDGMENT FOR PRE-AND POSTJUDGMENT INTEREST; AND (5) AMENDING FINDINGS OF FACT AND CONCLUSIONS OF LAW